**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52745**

| | | |
|---|---|---|
| **In the Matter of: John Doe I** | ) | |
| **A Child Under Eighteen (18) Years of Age.** | ) ) | |
| **STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE,** | ) ) ) | **Filed: June 17, 2025** |
| **Petitioner-Respondent,** | ) ) | **Melanie Gagnepain, Clerk** |
| **v.** | ) ) | **THIS IS AN UNPUBLISHED** |
| **JANE DOE (2025-08),** | ) ) ) | **OPINION AND SHALL NOT BE CITED AS AUTHORITY** |
| **Respondent-Appellant.** | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Seventh Judicial District, State of Idaho, Bonneville County. Hon. Tawnya Rawlings, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Eric. D. Fredericksen, State Public Defender; Elizabeth Cutler, Deputy Public Defender, Idaho Falls, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark V. Withers, Deputy Attorney General, Idaho Falls, for respondent.

_____

HUSKEY, Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights to her child ("Child"). Doe argues the magistrate court erred in finding that she neglected Child and, alternatively, was unable to discharge her parental responsibilities. Doe also argues the magistrate court erred in finding that it is in Child's best interests to terminate Doe's parental rights. The magistrate court's judgment terminating Doe's parental rights is affirmed.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Doe has had four children. Regarding Child A, although Doe retains parental rights to him, Child A was ultimately placed with his father. Doe's parental rights to Child B were involuntarily

1

terminated in 2019 and her parental rights to Child C were terminated in 2022. The child in this case is Doe's youngest child. Umbilical cord testing results indicated that Child was born with methamphetamine and fentanyl in his system. It took approximately six days for the test results to be returned, by which time Doe and Child had been discharged and returned home. Upon obtaining the test results, the case was referred to the Idaho Department of Health and Welfare ("Department"). Department workers went to Doe's home, ultimately made contact with Doe, and removed Child based on imminent danger. In the three days between being discharged from the hospital and the arrival of the Department workers, Child's weight had decreased from a birth weight of 6.2 pounds to 5.62 pounds, a loss of twelve percent of his body weight. Child gained several ounces within ten hours of being placed in foster care. Doe acknowledged to Susan Devine, a Department worker, that she regularly used both methamphetamine and fentanyl while pregnant with Child; Doe later clarified with her probation officer that her drug use had been daily until she realized she was pregnant and then she continued to use controlled substances three to five times a week until a few days before Child's birth. A few days after Child's removal, Doe was arrested for probation violations, and her probation was revoked; Doe has remained in custody since August 20, 2024.

The Department filed a petition pursuant to the Child Protection Act ("CPA") requesting that Child be placed in shelter care with the Department; the magistrate court ordered Child to be sheltered within the Department. The Department then filed a motion for a finding of aggravating circumstances and suspending reunification efforts between Doe and Child because Doe's parental rights to Child B were involuntarily terminated in 2019. The magistrate court held an adjudicatory hearing, at which the magistrate court indicated that if it found Child was subjected to aggravating circumstances, it would hold a permanency hearing and would consider changing the permanency plan from reunification to termination of Doe's parental rights. Following the hearing on the motion for a finding of aggravating circumstances, the magistrate court entered written findings, including that Doe's involuntary termination of her parental rights to Child B in 2019 (and perhaps the involuntary termination of her parental rights to Child C in 2022, although it is not entirely clear from the record) was an aggravating circumstance. The magistrate court also found additional facts to support its conclusion that reunification efforts should be suspended, including: (1) Doe had a chronic drug addiction for approximately 23 years at the time of Child's birth; (2) Doe's drug use while pregnant with Child; (3) the loss of Doe's prior children primarily due to

2

her drug use; (4) the loss of bodyweight suffered by Child in the three days he was with Doe; (5) Doe's current incarceration and likely length of her retained jurisdiction program; (6) Doe's inability to provide for the needs of Child; and (7) the fact that Child is thriving in foster care. The magistrate court concluded that the existence of the prior involuntary termination, coupled with the additional facts, "suggest that a finding of aggravated circumstances is justified, i.e., that any efforts to reunify with the parent should be suspended and the case should move to a permanency goal of termination of parental rights." The magistrate court modified the permanency plan to termination of Doe's parental rights, followed by adoption, with the concurrent plan of reunification, and continued to suspend efforts to reunify Doe and Child. Following a hearing, the magistrate court issued written findings of fact and conclusions of law and terminated Doe's parental rights to Child. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

On appeal, Doe asserts the magistrate court erred in finding two statutory bases for terminating her parental rights: that Doe neglected Child pursuant to Idaho Code §§ 16-1602(31) and 16-2005(1)(b), and that Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(d). Doe also asserts that the magistrate court erred in terminating Doe's parental

3

rights based on an aggravated circumstance and in finding that terminating her parental rights is in the best interests of Child.  The Department argues that the magistrate court did not err in any of its legal conclusions.

Before reaching the merits of Doe's argument, we must first address a procedural issue. Idaho Appellate Rule 35(e) requires that, "References to the reporter's transcript and clerk's record must be within the body of the brief, and shall not be included as footnotes or endnotes."  Idaho Appellate Rule 36(b) requires that, "The type shall be no smaller than 12 point Times New Roman. All lines must be double-spaced, except for quotations which may be indented and single spaced." Nothing in I.A.R. 36(b) exempts footnotes from the font and line spacing requirement.  The appellant's opening brief contains forty-six footnotes, which include citation to authority, the record, and the transcript.  The respondent's brief contains 180 footnotes which include citation to authority, the record, and the transcript.  In both briefs, the footnote font is smaller than Times New Roman 12 point and is single spaced.  The failure to comply with the appellate rules may result in a waiver of the issues on appeal.  However, despite the fact that both parties' briefs are subject to procedural default (and a waiver of their arguments on appeal), we will nonetheless address the issues raised on appeal.

**A.** **Statutory Bases for Termination**

Statutory grounds for termination of parental rights include:  (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) inability to discharge parental responsibilities for a prolonged period, which will be injurious to the health, morals, or well-being of the child; or (e) incarceration for a substantial period of time during the child's minority.  I.C. § 16-2005.  Upon finding a statutory ground for termination, the court must also find that it is in the best interests of the child to terminate the parent-child relationship.  I.C. § 16-2005(1).  Both findings must be established by clear and convincing evidence.

Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31).  Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them.

4

The magistrate court found that Doe neglected Child pursuant to I.C. §§ 16-2005(1)(b) and 16-1602(31) because of her acknowledged regular use of drugs throughout her pregnancy and her failure to tell medical personnel about her drug use. The magistrate court also found Doe's history of substance abuse negatively impacted her ability to care for Child. Finally, the court noted that during the three days that Doe had custody of Child following their discharge from the hospital after Child's birth, Child lost a significant amount of weight and Doe did not take Child to any of the scheduled medical appointments to address his low birth weight and jaundice. The magistrate court also considered and found that Doe's history of instability and criminality, her lack of current employment or the ability to financially provide for Child, and her incarceration, were contrary to providing for the health, morals, and well-being of Child and demonstrated Doe was not in a position to discharge her parental responsibilities for Child.

The magistrate court also found Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(d). The magistrate court considered: (1) Doe's incarceration throughout the case; (2) Doe's acknowledged use of methamphetamine and fentanyl during her pregnancy with Child; (3) that Doe's parental rights to prior children were terminated, with one of those terminations a documented involuntary termination; (4) Doe's twenty-three-year history of substance abuse; (5) Doe's history of an inability to comply with a case plan in the involuntary termination case and her continued use of drugs during that case; (6) Doe's inability to demonstrate a substantial and prolonged period of stability; (7) Doe's failure to address her substance abuse; (8) Doe's current incarceration due to drug offenses; and (9) Doe's inability to demonstrate an ability to meet Child's needs.

In addition to finding neglect and an inability to discharge parental responsibilities, the magistrate court also found that the termination of Doe's parental rights was justified based on the aggravated circumstances. The magistrate court concluded that:

> The evidence in this case, together with the pattern of behavior shown toward previous children, justifies a determination that a finding of aggravated circumstance is appropriate with respect to [Child], and that the return of [Child] . . . would result in an unacceptable risk to the health and welfare of [Child].

Doe argues that the magistrate court did not properly consider Doe's efforts to mitigate the harmful effects of her substance abuse during her pregnancy with Child because, given a previous medical procedure, Doe did not know she was pregnant and, once she knew, she enrolled herself in a methadone clinic. Similarly, Doe argues the magistrate court's finding that Doe failed to care

5

for Child in the days before his removal is not supported by the evidence. Finally, Doe argues that Doe's incarceration was due to a conviction from 2018, and Doe has not been charged with any new offenses.

The magistrate court noted and considered all the factors Doe cites above. Doe's argument essentially asks us to reweigh the evidence presented at trial and determine that her conduct does not amount to neglect. It is well established that appellate courts in Idaho do not reweigh evidence. *Idaho Dep't of Health & Welfare v. Doe (2022-22)*, 171 Idaho 277, 282, 519 P.3d 1217, 1222 (2022). The magistrate court did not err in finding by clear and convincing evidence that Doe neglected Child pursuant to I.C. §§ 16-2005(1)(b) and 16-1602(31).

Doe next argues the magistrate court erred in finding Doe was unable to discharge her parental responsibilities pursuant to I.C. § 16-2005(1)(d). Doe argues that even in her prior CPA cases, she demonstrated she is capable of bonding with and caring for her children. Doe argues that her prior struggles with addiction are a result of, in significant part, her lack of supportive relationships, but this time things are different because she maintained sobriety during her incarceration, successfully completed her retained jurisdiction program, and has a support system in friends and co-workers. Doe argues she demonstrated stability by maintaining her employment prior to her incarceration and by having housing. The magistrate court considered these factors and came to a different conclusion. Doe's argument essentially asks this Court to reweigh evidence presented at trial. As noted above, this Court will not reweigh evidence. *See Doe (2022-22)*, 171 Idaho at 282, 519 P.3d at 1222.

Finally, Doe argues that although the magistrate court properly concluded there was a basis for a finding of aggravated circumstances in this case for purposes of suspending reunification, it erred in determining the aggravated circumstance was a basis for terminating Doe's parental rights. Doe argues that a prior involuntary termination is not a basis for terminating parental rights pursuant to I.C. § 16-2005(2), and thus, the magistrate court erred in finding aggravated circumstances provided an independent statutory basis for terminating her parental rights. The Department argues that although the magistrate court found an aggravated circumstance based on the prior involuntary termination of her parental rights to another child, the magistrate court did not treat the aggravated circumstance as a rebuttable presumption that termination of Doe's parental rights is in the best interests of Child. Instead, the magistrate court "merely noted in its decree that Jane Doe had indeed subjected [Child] to aggravated circumstances, a finding which

6

was a matter of record." The Department is incorrect, as the magistrate court explicitly found that clear and convincing evidence justified terminating the parent-child relationship between Doe and Child because Doe subjected Child to aggravated circumstances, as defined in I.C. §§ 16-1602(6) and 16-2005(2). The magistrate court further clarified it was not finding an aggravated circumstance based on chronic neglect, but instead, only on the fact of the prior involuntary termination.

Assuming, for purposes of this opinion, that a finding of aggravated circumstances based on the prior involuntary termination of parental rights in a prior case does not provide an independent basis for terminating parental rights pursuant to I.C. § 16-2005(2), it does not affect this Court's determination that the record supports the magistrate court's findings of clear and convincing evidence of the two other statutory bases, I.C. §§ 16-2005(1)(b) and 16-2005(1)(d), upon which Doe's parental rights could be terminated. Because each statutory basis is an independent basis, the magistrate court did not err in concluding there were at least two statutory bases upon which Doe's parental rights could be terminated: neglect and an inability to discharge parental responsibilities.

## B.     Best Interests

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

In finding that it is in Child's best interests to terminate Doe's parental rights, the magistrate court held that Child is thriving in his pre-adoptive foster placement, has bonded with his foster family, has special needs that are being met, Child does not have a bond with Doe, Doe's regular

7

drug use while pregnant with Child negatively impacted Child, and Doe's parental rights to two prior children were terminated, at least one of which was involuntary. The magistrate court also found that Child needs permanency, certainty, stability, and that Doe testified it is in Child's best interests to remain in foster care. The magistrate court noted that, "Every child deserves a safe, secure and clean home environment with a stable caregiver who can meet his physical and emotional needs. Stability and certainty are necessary for [Child] to continue making appropriate developmental progress." The magistrate court also noted Doe's substance abuse history, Doe's failure to demonstrate any progress or willingness to change for a significant period of time, and that, given Doe's history, there is no indication she would modify her behavior in the future to be able to maintain a safe and stable home for Child.

Doe argues the magistrate court failed to consider that Doe demonstrated a greater period of stability in the years since the prior involuntary termination to Child B. Doe also argues there was insufficient evidence presented at trial that showed Doe's drug use negatively impacted Child or that reunification between Doe and Child would take a long time.

Contrary to Doe's assertions, ample testimony at trial indicated Doe's instability, including her near daily drug use prior to discovering her pregnancy and her use of controlled substances three to five times a week after that discovery. Child was born with methamphetamine, fentanyl, and methadone in his system and with a low birth weight due to his exposure to drugs in utero. Moreover, Child suffered significant weight loss in the three days he was in Doe's care following their discharge from the hospital, during which time Doe admitted to using controlled substances. Child suffers from tremors, also related to Doe's drug use while pregnant. Doe's argument essentially asks this Court to reweigh evidence presented at trial. As noted above, this Court will not reweigh evidence. *See Doe (2022-22)*, 171 Idaho at 282, 519 P.3d at 1222. The magistrate court considered the above factors and concluded that terminating Doe's parental rights is in the best interests of Child. The magistrate court did not err in reaching this conclusion.

## IV.

## CONCLUSION

The magistrate court did not err in finding statutory bases for neglect and that termination of Doe's parental rights is in Child's best interests because its findings are supported by substantial and competent evidence. Therefore, the judgment terminating Doe's parental rights is affirmed.

Judge LORELLO and Judge TRIBE, **CONCUR**.

8