**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 52910**

| | | |
|---|---|---|
| In the Matter of: <br> Jane Doe I and John Doe I, <br> Children Under Eighteen (18) Years of Age. | ) <br> ) <br> ) <br> ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) <br> ) <br> ) | Filed: September 5, 2025 |
| Petitioner-Respondent, | ) <br> ) | Melanie Gagnepain, Clerk |
| v. | ) <br> ) | THIS IS AN UNPUBLISHED |
| JOHN DOE (2025-15), | ) <br> ) | OPINION AND SHALL NOT <br> BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) <br> ) <br> ) | |

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Boundary County. Hon. Justin W. Julian, District Judge.

Decree and judgment terminating parental rights, affirmed.

Idaho Premier Law Group, PLLC; D. Scott Bauer, Sandpoint, for appellant.

Hon. Raúl R. Labrador, Attorney General; Jennifer Fegert, Deputy Attorney General, Coeur d'Alene, for respondent.

---

HUSKEY, Judge

John Doe appeals from the magistrate court's decree and judgment terminating his parental rights to his children, Jane Doe I and John Doe I (Children). Doe argues the magistrate court erred in finding that it is in Children's best interests to terminate his parental rights. The Idaho Department of Health and Welfare (Department) argues the magistrate court considered the evidence in the case and the statutory factors and properly concluded it was in Children's best interests to terminate Doe's parental rights. We hold the magistrate court did not err in terminating Doe's parental rights.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological father of Children. Based on concerns of an unstable home environment and parental substance abuse, the Department filed a petition for removal pursuant to the Child Protective Act (CPA). On April 24, 2023, two days before Children were removed, Doe was arrested on a felony possession of a controlled substance charge. Following a shelter care hearing, Doe stipulated to the Department taking custody of Children and thereafter, a case plan was developed with conditions for reunification with Children and conditions for the case closure. Among other things, Doe was to address any pending criminal issues, maintain sobriety, provide a safe and stable home for Children, financially provide for himself and Children, "work on" any recommendations of his substance abuse counselor, and comply with all safety plans.

Thereafter, the Department filed a petition to change the permanency plan from reunification to termination of Doe's parental rights. The Department alleged that Doe had neglected Children by failing to complete the case plan and reunification had not occurred within seventeen months. The Department noted that during the pendency of the case, Doe accrued two felony convictions for possession of a controlled substance: the first occurred two days before Children were removed and placed into care, and one approximately ten months (February 2024) after Children were removed and placed into care. After his release from custody, Doe was ordered to enroll in substance abuse treatment. While in treatment, Doe relapsed approximately four months after his release from custody. The Department further argued that at the time of the termination trial, Doe was living in a place that did not permit children, and his roommate would not pass the background check for the Department to approve his home as a safe residence for Children. Following trial, the magistrate court terminated Doe's parental rights to Children.[1] Doe appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243,

---

[1] Children's biological mother's rights were terminated in Docket No. 52909, which is currently on appeal.

245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

On appeal, Doe does not challenge the magistrate court's finding that he neglected Children by failing to comply with the case plan. Doe only argues that the magistrate court erred in finding that it is in Children's best interests to terminate Doe's parental rights. The State argues that the magistrate court did not err in finding that termination of Doe's parental rights is in Children's best interests.

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012). Because Doe does not challenge the magistrate court's finding that Doe neglected Children, we need only address whether termination of Doe's parental rights is in the best interests of Children. Doe argues the Department has not met its burden to demonstrate that termination is in the best

3

interests of Children because the Department failed to present any qualified expert testimony or reliable evidence on the long-term psychological effects of severing the parent-child bond or the parental loss harm to Children.

The magistrate court, after considering the evidence presented at trial and the written closing arguments submitted by the parties, issued a memorandum opinion and order finding Doe failed to achieve sobriety or comply with the most basic goals of his case plan. The magistrate court noted Doe did not challenge that he failed to complete his case plan but instead, challenged whether the caseworker had "the educational background to qualify her to testify that termination is in the best interests of these particular children." The magistrate court characterized Doe's claims as "wide, generalized assertions" about the requirement for expert testimony and noted that Doe cited no authority in support of his position. The magistrate court explicitly found the caseworker's testimony regarding the best interests of Children to be admissible, qualified, credible, and persuasive. Finally, the magistrate court concluded that Doe's plan--to essentially leave Children in foster care indefinitely and hope that at some point, Doe would be released from custody, remain sober, and secure safe and stable housing--would leave Children in a state of legal limbo. The magistrate court concluded that Doe neglected Children and termination of Doe's parental rights is in Children's best interests.

On appeal, Doe renews his argument that the magistrate court erred in concluding that terminating his parental rights is in the best interests of Children. Doe argues that this Court should adopt the reasoning of other jurisdictions and hold that a "best interests" determination must expressly include a "meaningful assessment of the Parent-Child Bond (PCB) and the Parental Loss Harm (PLH) inherent in terminating parental rights." Doe cites to *In re Caden C.*, 486 P.3d 1096 (Cal. 2021) and *New Jersey Div. of Youth & Family Services v. E.P.*, 925 A.2d 436 (N.J. 2008) in support of his argument. However, those cases are both distinguishable and unpersuasive.

*In re Caden C.* dealt with a statutory exception to termination. In California, a parent may avoid termination of parental rights in certain circumstances listed in the termination statute. In *In re Caden C.*, mother asserted one of the statutory exceptions, the parental-benefit exception, which requires a parent to establish, by a preponderance of the evidence, that "the parent has regularly visited with the child, that the child would benefit from continuing the relationship, and that terminating the relationship would be detrimental to the child." *In re Caden C.*, 486 P.3d at

4

882. The court found that mother had met that burden based on the testimony of her expert witness. *Id*. at 886.

The California statute at issue, CAL. WELF. & INST. CODE § 366.26 (West 2024), is very different from the Idaho statutes governing termination of parental rights. For example, the California statute explicitly requires the trial court to determine by clear and convincing evidence that the child is likely to be adopted. *In re Caden C.*, 486 P.3d at 883. Additionally, the statute grants exceptions to termination if the parent can show that termination would be detrimental to the child for at least one specifically enumerated reason. *Id.* Idaho has no similar statutory requirement or exception. *See* I.C. § 16-2005.

Based on the statutory differences alone, this Court holds that *In re Caden C.* is unpersuasive. However, even under the California statute, the burden is on the parent asserting the exception, not the Department, to provide the expert testimony. No such testimony was presented by Doe in this case and as to one of Children, the child requested Doe's parental rights be terminated--precisely the opposite of the kind of bond present in *In re Caden C.*

Similarly, in *E.P.*, the issue was whether, given the unique circumstances of the case, the termination of a mother's parental rights was appropriate. In that case, the child was a teenager, was emotionally fragile and unstable, had no other family and no prospects of adoption, had been cycled through multiple foster homes and suffered abuse, and whose only "enduring emotional and loving bond" was with the mother, despite the mother's inability to care for the child due to a chronic drug addiction. *E.P.*, 925 A.2d at 438. At the termination trial, mother presented testimony from her expert, who opined that terminating mother's parental rights would not be in the child's best interests because the child did not want to be adopted, wanted to return to her mother's care, and had no other competing parental figures in her life. *Id.* at 441. Mother's parental rights were terminated, and she appealed.

At issue was a subsection of the New Jersey statute regarding the termination of parental rights, N.J. STAT. ANN. § 30:4C-15.1(a)(4) (West 2021), which required the Division of Youth and Family Services (Division) to prove by clear and convincing evidence, in part, that "termination of parental rights will not do more harm than good." *E.P.*, 952 A.2d at 445. The court concluded that the Division had not established this statutory subsection of the statute based upon the unique facts of the case. Those facts included that the child had "bounced around" seven different foster homes in nine years, there was no prospective permanent placement for the child, and thus,

5

"Against the bleak prospect of adoption remains the one sustaining force in [child's] young life-- her mother's love and emotional support." *Id*. at 448. The court ultimately held that "a parent-child relationship that continued to provide emotional sustenance to the child should not have been severed based on the unlikely promise of a permanent adoptive home." *Id*. at 451.

As in *In re Caden C.*, the differences between the New Jersey and Idaho statutes are significant enough to undermine the relevance of the *E.P.* opinion. But even if *E.P.* was somehow relevant, the facts are so dissimilar that this Court declines to find it persuasive. There was no evidence presented to, or factual findings made by, the magistrate court that would indicate Children here had no other family, no prospects of adoption, had been cycled through multiple foster homes and suffered abuse, and whose only "enduring emotional and loving bond" was with Doe. Indeed, Children were placed in kinship foster care with their paternal grandmother. Consequently, we decline to adopt the holdings of either *In re Caden C.* or *E.P.*

As to Doe's argument that the caseworker was not qualified as an expert to testify about whether termination is in the best interests of Children, Idaho has never held that the Department must present expert testimony regarding the best interests of the child. *See Doe v. Roe*, 133 Idaho 805, 809, 992 P.2d 1205, 1209 (1999) ("There is no requirement that a party seeking termination present expert testimony to support the assertion that termination would be in the best interests of the child."). In its memorandum opinion and order, the magistrate court noted that the caseworker in this case had worked with Doe during the two-year pendency of the case and stated: "She has worked with this family for the past two years, staffed this case with colleagues within the Department, drafted periodic progress reports, tailored the case plan to meet the needs of these particular children and their parents, and appeared in court at various hearings in this case."

The caseworker testified that termination is in the best interests of Children because despite two years of services and support, Doe was unable to provide safe and stable housing and Children deserved a loving, nurturing, safe, and stable environment. Similarly, the Court Appointed Special Advocate (CASA), who the magistrate court also noted was credible, testified that even after twenty-two months, there were still safety and stability issues associated with Doe's addiction.

Moreover, there was substantial and competent evidence to support the magistrate court's finding that termination is in the best interests of Children. During the pendency of the case, Doe was sentenced on his first felony charge in February 2024 and remained in custody until June or July 2024, at which point he checked himself into a treatment program. He was also charged with,

6

plead guilty to, and was sentenced on another felony possession of a controlled substance charge, resulting in several periods of incarceration and court-ordered treatment.

Doe's on-going substance abuse was significant enough that Doe relapsed while he was in treatment. Although Doe remained drug-free for approximately four months prior to the termination trial, which is to be commended, Idaho's appellate courts have recognized that trial courts do not err by finding that a parent's recent improvement is outweighed by the other factors of the best interests analysis. *See, e.g.*, *Idaho Dep't of Health & Welfare v. Doe (2011-18)*, 152 Idaho 644, 650, 273 P.3d 685, 691 (2012) (finding no error when the trial court "weighed the totality of the evidence and concluded that 'quite frankly it is too little, too late'"); *Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 761, 390 P.3d 1281, 1288 (2017) (finding "no error in the magistrate's conclusion that Mother's recent and modest improvements were insufficient to overcome her history of demonstrated unfitness").

At the time of the termination trial, Doe was renting a room that did not allow children, and his roommate would not be approved by the Department, demonstrating that Doe could not provide safe and stable housing for Children. Doe's substance abuse prevented him from maintaining a drug-free home, interfered with his visitation with Children because of his incarceration, and resulted in a lack of safe and stable housing for Children. While there was testimony that Doe loved Children and Children loved Doe, the Idaho appellate courts have repeatedly held that love does not always translate into the ability to discharge parental responsibilities. *Idaho Dep't of Health & Welfare v. Doe*, 149 Idaho 165, 171, 233 P.3d 96, 102 (2010).

The magistrate court's findings are supported by clear and convincing evidence, from credible witnesses, that Doe's addiction leading to criminal convictions and on-going instability established that Doe neglected Children and that terminating Doe's parental rights is in the best interests of Children.

## IV.

## CONCLUSION

The magistrate court did not err in finding that termination of Doe's parental rights is in Children's best interests because its findings are supported by substantial and competent evidence. Therefore, the decree and judgment terminating Doe's parental rights is affirmed.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.

7